**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq.
609 W. South Orange Avenue, Suite 2P
South Orange, NJ 07079
Tel: (973) 313-1887
Fax: (973) 833-0399
Email: lrosen@rosenlegal.com

Counsel for Plaintiff

*(additional counsel on signature page)*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SHOUQI LUO, Individually and on behalf of all others similarly situated, | Case No. 17-cv-4883 |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** |
| v. | |
| SINOVAC BIOTECH LTD., WEIDONG YIN, DANNY CHUNG, NAN WANG, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Shouqi Luo ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Sinovac Biotech Ltd. ("Sinovac" or the "Company"), analysts' reports and advisories about the Company, and

1

information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants who purchased or otherwise acquired the publicly traded securities of Sinovac from April 30, 2013 through May 16, 2017, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

3. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

4. Venue is proper in this judicial district pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as a significant portion of Defendants' actions, and subsequent damages, took place within this judicial district.

5. In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce,

including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff, as set forth in the accompanying Certification, purchased the Company's securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

7. Defendant Sinovac engages in the research, development, manufacture, and commercialization of vaccines against hepatitis A, hepatitis B, seasonal influenza, H5N1 and H1N1 pandemic influenza, and mumps in the People's Republic of China. The Company is incorporated in Antigua, West Indies and its principal executive offices are located at No. 39 Shangdi Xi Road, Haidian District, Beijing 100085 People's Republic of China. The Company's securities were traded on the Nasdaq Stock Market ("NASDAQ") under the ticker symbol "SVA."

8. Defendant Weidong Yin ("Yin") has been the Company's Chairman and Chief Executive Officer throughout the Class Period.

9. Defendant Danny Chung ("Chung") was the Company's Chief Financial Officer from May 1, 2012 until his resignation on June 1, 2013.

10. Defendant Nan Wang ("Wang") has been the Company's Chief Financial Officer since June 1, 2013.

11. Defendants Yin, Chung and Wang are sometimes referred to herein as the "Individual Defendants."

12. Each of the Individual Defendants:

(a) directly participated in the management of the Company;

3

(b) was directly involved in the day-to-day operations of the Company at the highest levels;

(c) was privy to confidential proprietary information concerning the Company and its business and operations;

(d) was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e) was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f) was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g) approved or ratified these statements in violation of the federal securities laws.

13. The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

14. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

15. The Company and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading Statements

16. On April 30, 2013, the Company filed a Form 20-F for the fiscal year ended December 31, 2012 ("2012 20-F") with the SEC, which provided the Company's annual financial results and position. The 2012 20-F was signed by Defendant Yin. The 2012 20-F also

contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Yin and Chung attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

17. The 2012 20-F stated the following with regards to applicable anti-corruption laws:

> ***Failure to comply with the U.S. Foreign Corrupt Practices Act and other applicable anti-corruption laws could subject us to penalties and other adverse consequences and corrupt practices by our competitors may place us at a competitive disadvantage.***
>
> Our executive officers, employees and other agents may violate applicable law in connection with the marketing or sale of our products, including the U.S. Foreign Corrupt Practices Act, or the FCPA, and applicable anti-corruption law in China and other jurisdictions in which our products are sold or registered for sale. The FCPA generally prohibits United States issuers from engaging in bribery or other prohibited payments to foreign officials for the purpose of obtaining or retaining business and requires issuers to maintain reasonable internal controls. The PRC also strictly prohibits bribery of government officials. We have adopted a policy regarding compliance with the FCPA and other applicable anti-corruption laws to prevent, detect and correct such corrupt practice. However, corruption, extortion, bribery, pay-offs, theft and other fraudulent practices occur from time-to-time in the PRC and the countries in which we seek to do business. While we have implemented measures to ensure compliance with the FCPA and other applicable anti-corruption laws by all individuals involved with our company, it is possible that our compliance policies and procedures may be insufficient or may fail to prevent our employees or other agents from engaging in inappropriate conduct for which we might be held responsible. If our employees or other agents are found to have engaged in such practices, we could suffer severe penalties and other consequences that may have a material adverse effect on our business, financial condition and results of operations. In addition, our brand and reputation, our sales activities or the price of our common shares could be adversely affected if we become the target of any negative publicity as a result of actions taken by our employees or other agents.
>
> In addition, there may be corrupt practices in the healthcare industry in China and other countries in which we conduct business. For example, in order to secure agreements with CDCs or hospitals in China, our competitors may engage in corrupt practices in order to influence decision-makers in violation of the anti-corruption laws of China and the FCPA. As competition persists and intensifies in

our industry, we may lose potential clients, client referrals and other opportunities to the extent that our competitors engage in such practices or other illegal activities.

18.     On April 16, 2014, the Company filed a Form 20-F for the fiscal year ended December 31, 2013 ("2013 20-F") with the SEC, which provided the Company's annual financial results and position. The 2013 20-F was signed by Defendant Yin. The 2013 20-F also contained signed SOX certifications by Defendants Yin and Wang attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

19.     The 2013 20-F stated the following with regards to applicable anti-corruption laws:

> ***Failure to comply with the U.S. Foreign Corrupt Practices Act and other applicable anti-corruption laws could subject us to penalties and other adverse consequences and corrupt practices by our competitors may place us at a competitive disadvantage.***
>
> Our executive officers, employees and other agents may violate applicable law in connection with the marketing or sale of our products, including the U.S. Foreign Corrupt Practices Act, or the FCPA, and applicable anti-corruption law in China and other jurisdictions in which our products are sold or registered for sale. The FCPA generally prohibits United States issuers from engaging in bribery or other prohibited payments to foreign officials for the purpose of obtaining or retaining business and requires issuers to maintain reasonable internal controls. The PRC also strictly prohibits bribery of government officials. We have adopted a policy regarding compliance with the FCPA and other applicable anti-corruption laws to prevent, detect and correct such corrupt practice. However, corruption, extortion, bribery, pay-offs, theft and other fraudulent practices occur from time-to-time in the PRC and the countries in which we seek to do business. While we have implemented measures to ensure compliance with the FCPA and other applicable anti-corruption laws by all individuals involved with our company, it is possible that our compliance policies and procedures may be insufficient or may fail to prevent our employees or other agents from engaging in inappropriate conduct for which we might be held responsible. If our employees or other agents are found to have engaged in such practices, we could suffer severe penalties and other consequences that may have a material adverse effect on our business, financial condition and results of operations. In addition, our brand and reputation, our sales activities or the price of our common shares could be adversely affected if

we become the target of any negative publicity as a result of actions taken by our employees or other agents.

In addition, there may be corrupt practices in the healthcare industry in China and other countries in which we conduct business. For example, in order to secure agreements with CDCs or hospitals in China, our competitors may engage in corrupt practices in order to influence decision-makers in violation of the anti-corruption laws of China and the FCPA. As competition persists and intensifies in our industry, we may lose potential clients, client referrals and other opportunities to the extent that our competitors engage in such practices or other illegal activities.

20. On April 29, 2015, the Company filed a Form 20-F for the fiscal year ended December 31, 2014 ("2014 20-F") with the SEC, which provided the Company's annual financial results and position. The 2014 20-F was signed by Defendant Yin. The 2014 20-F also contained signed SOX certifications by Defendants Yin and Wang attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

21. The 2014 20-F stated the following with regards to applicable anti-corruption laws:

> ***Failure to comply with the U.S. Foreign Corrupt Practices Act and other applicable anti-corruption laws could subject us to penalties and other adverse consequences and corrupt practices by our competitors may place us at a competitive disadvantage.***
>
> Our executive officers, employees and other agents may violate applicable law in connection with the marketing or sale of our products, including the U.S. Foreign Corrupt Practices Act, or the FCPA, and applicable anti-corruption law in China and other jurisdictions in which our products are sold or registered for sale. The FCPA generally prohibits United States issuers from engaging in bribery or other prohibited payments to foreign officials for the purpose of obtaining or retaining business and requires issuers to maintain reasonable internal controls. The PRC also strictly prohibits bribery of government officials. We have adopted a policy regarding compliance with the FCPA and other applicable anti-corruption laws to prevent, detect and correct such corrupt practice. However, corruption, extortion, bribery, pay-offs, theft and other fraudulent practices occur from time-to-time in the PRC and the countries in which we seek to do business. While we have implemented measures to ensure compliance with the FCPA and other applicable

7

anti-corruption laws by all individuals involved with our company, it is possible that our compliance policies and procedures may be insufficient or may fail to prevent our employees or other agents from engaging in inappropriate conduct for which we might be held responsible. If our employees or other agents are found to have engaged in such practices, we could suffer severe penalties and other consequences that may have a material adverse effect on our business, financial condition and results of operations. In addition, our brand and reputation, our sales activities or the price of our common shares could be adversely affected if we become the target of any negative publicity as a result of actions taken by our employees or other agents.

In addition, there may be corrupt practices in the healthcare industry in China and other countries in which we conduct business. For example, in order to secure agreements with CDCs or hospitals in China, our competitors may engage in corrupt practices in order to influence decision-makers in violation of the anti-corruption laws of China and the FCPA. As competition persists and intensifies in our industry, we may lose potential clients, client referrals and other opportunities to the extent that our competitors engage in such practices or other illegal activities.

22.     On April 25, 2016, the Company filed a Form 20-F for the fiscal year ended December 31, 2015 ("2015 20-F") with the SEC, which provided the Company's annual financial results and position. The 2015 20-F was signed by Defendant Yin. The 2015 20-F also contained signed SOX certifications by Defendants Yin and Wang attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

23.     The 2015 20-F stated the following with regards to applicable anti-corruption laws:

> ***Failure to comply with the U.S. Foreign Corrupt Practices Act and other applicable anti-corruption laws could subject us to penalties and other adverse consequences and corrupt practices by our competitors may place us at a competitive disadvantage.***
>
> Our executive officers, employees and other agents may violate applicable laws in connection with the marketing or sale of our products, including the U.S. Foreign Corrupt Practices Act, or the FCPA, and applicable anti-corruption laws in China and other jurisdictions in which our products are sold or registered for sale. The FCPA generally prohibits United States issuers from engaging in bribery or other

8

prohibited payments to foreign officials for the purpose of obtaining or retaining business and requires issuers to maintain reasonable internal controls. The PRC also strictly prohibits bribery of government officials. We have adopted a policy regarding compliance with the FCPA and other applicable anti-corruption laws to prevent, detect and correct such corrupt practice. However, corruption, extortion, bribery, pay-offs, theft and other fraudulent practices occur from time to time in the PRC and the countries in which we seek to do business. While we have implemented measures to ensure compliance with the FCPA and other applicable anti-corruption laws by all individuals involved with our company, it is possible that our compliance policies and procedures may be insufficient or may fail to prevent our employees or other agents from engaging in inappropriate conduct for which we might be held responsible. If our employees or other agents are found to have engaged in such practices, we could suffer severe penalties and other consequences that may have a material adverse effect on our business, financial condition and results of operations. In addition, our brand and reputation, our sales activities or the price of our common shares could be adversely affected if we become the target of any negative publicity as a result of actions taken by our employees or other agents.

In addition, there may be corrupt practices in the healthcare industry in China and other countries in which we conduct business. For example, in order to secure agreements with CDCs or hospitals in China, our competitors may engage in corrupt practices in order to influence decision-makers in violation of the anti-corruption laws of China and the FCPA. As competition persists and intensifies in our industry, we may lose potential clients, client referrals and other opportunities to the extent that our competitors engage in such practices or other illegal activities.

24. The statements referenced in ¶¶ 16-23 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Defendant Yin bribed a member of the Chinese Food and Drug Administration to assist the Company's vaccine clinical trial and approval; (2) such conduct would subject the Company to heightened regulatory scrutiny; and (3) as a result, the Company's public statements were materially false and misleading at all relevant times.

## The Truth Emerges

25. On December 21, 2016, analyst firm GeoInvesting, LLC published a report on the Company (the "GeoInvesting Report") asserting, among other things, that Defendant Yin bribed a member of the Chinese Food and Drug Administration to assist its vaccine clinical trial and approval, stating in part:

**Summary**

- ***Recently disclosed court documents show that Sinovac Biotech's CEO bribed a member of the Chinese Food and Drug Administration to assist its vaccine clinical trial and approval.***

- Bribery is a clear violation of Foreign Corrupt Practices Act regulations and is prohibited for SEC registered companies like SVA; it could lead to criminal prosecution and fines.

- We believe that non-disclosure of these actions taken by SVA's CEO is a clear violation of both SEC and NASDAQ regulations.

- We believe this revelation jeopardizes the company's two outstanding non-binding go private offers and could also impact future CFDA approvals and the company's cash flow.

- We believe U.S. regulators and Chinese FDA officials will investigate these allegations, as well as potential implications for all of SVA's past and future vaccines.

(Emphasis added).

26. On this news, shares of the Company fell $0.10 per share from its previous closing price to close at $5.55 per share on December 21, 2016, damaging investors.

27. On December 23, 2016, the Company issued a press release announcing the commencement of an internal investigation related to the GeoInvesting Report, stating in part:

**Sinovac Responds to Recent Report**

NEWS PROVIDED BY
Sinovac Biotech Co., Ltd.
23 Dec, 2016, 06:00 ET

SHARE THIS ARTICLE

BEIJING, Dec. 23, 2016 /PRNewswire/ -- Sinovac Biotech Ltd. (NASDAQ: SVA), a leading provider of biopharmaceutical products in China, today responded to a recent report regarding the allegations raised in a research report by Geoinvesting.

Sinovac's Audit Committee has authorized the commencement of an internal investigation into the allegations made in the report. The Audit Committee has engaged Latham & Watkins as independent counsel to assist with the investigation.

Pending the outcome of the investigation, to the knowledge of Sinovac, no legal proceedings or government inquiries have been made against the Company or its chief executive officer Mr. Yin, based on any claims described in the report.

28. On this news, shares of the Company fell $0.05 per share from its previous closing price to close at $5.79 per share on December 23, 2016, further damaging investors.

29. On May 1, 2017, the Company filed a Form 12b-25 with the SEC disclosing that its 2016 Annual Report will be delayed due to its internal investigation related to the GeoInvesting Report.

30. On this news, shares of the Company fell $0.05 per share from its previous closing price to close at $5.52 per share on May 1, 2017, further damaging investors.

31. On May 16, 2017, the Company issued a press release announcing that it would be unable to file its 2016 Annual Report within the 15-day extension period and the SEC staff commenced an enforcement inquiry related to the GeoInvesting Report, stating in part:

**Sinovac Biotech Announces Receipt of NASDAQ Letter and Delayed Filing of Annual Report on Form 20-F**

NEWS PROVIDED BY
Sinovac Biotech Co., Ltd.
16 May, 2017, 16:00 ET

SHARE THIS ARTICLE

BEIJING, May 16, 2017 /PRNewswire/ -- Sinovac Biotech Ltd. (NASDAQ: SVA)("Sinovac" or the "Company"), a leading provider of biopharmaceutical products in China, announced today that it is delaying its Annual Report on Form 20-F for the year ended December 31, 2016 (the "2016 Annual Report") and that it received a written notice from the Listing Qualifications Department of The Nasdaq Stock Market ("NASDAQ").

On May 1, 2017, Sinovac filed a Form 12b-25, Notification of Late Filing, with the Securities and Exchange Commission (the "SEC") regarding the delayed filing of its 2016 Annual Report. *Sinovac does not expect that it will be able to file the 2016 Annual Report within the 15-day extension period. The Company's Audit Committee requires additional time for its internal investigation regarding allegations raised in a research report by Geoinvesting.* The investigation has slowed completion of the Company's financial statements and audit for the year ended December 31, 2016. Management and the Audit Committee of the Company's Board of Directors are continuing to work diligently to complete its 2016 Annual Report and file it with the SEC as soon as possible.

*After the Company publicly announced the internal investigation arising from the Geoinvesting article, the SEC staff notified the Company of an enforcement inquiry related to the matters discussed in the article. The SEC staff subsequently issued a subpoena requesting documents related to the internal investigation.* The Company, at the direction of the Audit Committee and with the assistance of independent counsel, is cooperating with the SEC in response to the staff's requests for information.

(Emphasis added).

32.     On this news, shares of the Company fell $0.20 per share from its previous closing price on May 17, 2017, further damaging investors.

33.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

### PLAINTIFF'S CLASS ACTION ALLEGATIONS

34.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the publicly traded securities of Sinovac during the Class Period (the

"Class"); and were damaged upon the revelation of the alleged corrective disclosure. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

35. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, the Company's securities were actively traded on NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

36. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

37. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

38. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether Defendants' acts as alleged violated the federal securities laws;

(b) whether Defendants' statements to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of the Company;

(c) whether Defendants' statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(d) whether the Individual Defendants caused the Company to issue false and misleading SEC filings and public statements during the Class Period;

(e) whether Defendants acted knowingly or recklessly in issuing false and misleading SEC filings and public statements during the Class Period;

(f) whether the prices of the Company's securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

(g) whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

39. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

40. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

(a) Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b) the omissions and misrepresentations were material;

(c) the Company's securities are traded in efficient markets;

(d) the Company's securities were liquid and traded with moderate to heavy volume during the Class Period;

(e) the Company traded on the NASDAQ, and was covered by multiple analysts;

(f) the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; Plaintiff and members of the Class purchased and/or sold the Company's securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts; and

(g) Unexpected material news about the Company was rapidly reflected in and incorporated into the Company's stock price during the Class Period.

41. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

42. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5
### Against All Defendants

43. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

44. This Count is asserted against the Company and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

45. During the Class Period, the Company and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

46. The Company and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they: employed devices, schemes and artifices to defraud; made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of the Company's securities during the Class Period.

47. The Company and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or

acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

48. Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other personnel of the Company to members of the investing public, including Plaintiff and the Class.

49. As a result of the foregoing, the market price of the Company's securities was artificially inflated during the Class Period. In ignorance of the falsity of the Company's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of the Company's securities during the Class Period in purchasing the Company's securities at prices that were artificially inflated as a result of the Company's and the Individual Defendants' false and misleading statements.

50. Had Plaintiff and the other members of the Class been aware that the market price of the Company's securities had been artificially and falsely inflated by the Company's and the Individual Defendants' misleading statements and by the material adverse information which the

Company's and the Individual Defendants did not disclose, they would not have purchased the Company's securities at the artificially inflated prices that they did, or at all.

51.     As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

52.     By reason of the foregoing, the Company and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchases of the Company's securities during the Class Period.

## COUNT II

### Violation of Section 20(a) of The Exchange Act
### Against The Individual Defendants

53.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

54.     During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.

55.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

56.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class

Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of the Company's securities.

57. Each of the Individual Defendants, therefore, acted as a controlling person of the Company. By reason of their senior management positions and/or being directors of the Company, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, the Company to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

58. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

  C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

  D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: July 3, 2017      Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: /s/Laurence M. Rosen
Laurence M. Rosen
609 W. South Orange Avenue, Suite 2P
South Orange, NJ 07079
Tel: (973) 313-1887
Fax: (973) 833-0399
Email: lrosen@rosenlegal.com

Counsel for Plaintiff

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Tel: (212) 697-6484
Fax: (212) 697-7296
Email: peretz@bgandg.com

Additional Counsel for Plaintiff